1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

_____
                                      )
9   ENZO MORELLA,                     )        No. C12-0672RSL
                                      )
                     Plaintiff,       )
10            v.                      )
                                      )        ORDER GRANTING IN PART
11  SAFECO INSURANCE COMPANY OF       )        PLAINTIFF'S MOTION FOR
    ILLINOIS,                         )        SUMMARY JUDGMENT AND
12                                    )        CERTIFYING QUESTION TO
                     Defendant.       )        STATE SUPREME COURT
13  _____)

14

15          This matter comes before the Court on "Plaintiff's Motion for Summary

16   Judgment."  Dkt. # 23.  Summary judgment is appropriate when, viewing the facts in the light

     most favorable to the nonmoving party, there is no genuine dispute as to any material fact that
17
     would preclude the entry of judgment as a matter of law.  Addisu v. Fred Meyer, Inc., 198 F.3d
18
     1130, 1134 (9th Cir. 2000).  The party seeking summary dismissal of the case "bears the initial
19
     responsibility of informing the district court of the basis for its motion" (Celotex Corp. v.
20
     Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of the materials in the record
21
     that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)(1)).  Once the
22
     moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party
23
     fails to designate "specific facts showing that there is a genuine issue for trial."  Celotex Corp.,
24
     477 U.S. at 324.  "The mere existence of a scintilla of evidence in support of the non-moving
25

26

1  party's position is not sufficient:"  the opposing party must present probative evidence in support

2  of its claim or defense.  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir.

3  2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  In

4  other words, "summary judgment should be granted where the nonmoving party fails to offer

5  evidence from which a reasonable jury could return a verdict in its favor."  Triton Energy Corp.

6  v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

7       Having reviewed the memoranda, declarations, and exhibits submitted by the

8  parties and taking the evidence in the light most favorable to Safeco Insurance Company, the

9  Court finds as follows:

10                           **BACKGROUND**

11       On January 13, 2006, plaintiff Enzo Morella was injured when the truck in which

12  he was riding was struck from behind by an uninsured motorist.  Although Morella did not

13  require medical attention at the scene, he went to the doctor shortly thereafter and reported that

14  he had been experiencing neck pain and headaches since the accident.  When anti-

15  inflammatories and ice did not relieve the neck pain, Morella was given muscle relaxants and

16  sent to physical therapy.  He also went to a massage therapist.  Morella discontinued physical

17  therapy after eleven sessions because he had exhausted his medical benefits.  More than six

18  months later, in October 2006, he returned to the doctor complaining of neck pain and headaches

19  and exhibiting the same sort of tenderness and mobility restrictions he had shown before.  The

20  doctor again prescribed physical therapy.  In April 2007, the doctor noted that Morella's

21  recurring mechanical dysfunction fit the injury patterns associated with rear-end collisions,

22  found that his injuries were "resolved" or "mostly resolved," and released Morella from his care.

23       Safeco had issued a policy of insurance to the driver of the truck, and Morella was

24  covered as an "insured" under that policy.  Although it is not clear when or how Safeco received

25  notice of Morella's claim for uninsured motorist benefits, on May 13, 2008, Safeco offered

26  ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND
CERTIFYING QUESTION TO SUPREME COURT   -2-

$1,500 in full settlement of his claim.  At the time, Safeco calculated past medical expenses at $5,151.30 and estimated general damages between $1,500 and $3,000.  Safeco did not include in its evaluation any wage loss, but was aware that Morella was employed as a landscaper.  The $1,500 settlement offer seems to have been prompted by the belief that Morella's recurring pain and medical treatments were not causally related to the accident.  The unidentified evaluator states, "If insd would have continued treatment feel this would have resolved quickly with his physical therapy treatment."  Decl. of Sarah L. Eversole (Dkt. # 26), Ex. 1.  Morella rejected the settlement offer, noting that he had out of pocket healthcare expenses, was still in pain, had lost time at work because of the injury and his various appointments, and had to hire someone to do his job when he could not.  Safeco requested additional information regarding the claimed losses.

After rejecting Safeco's settlement offer, Morella consulted a chiropractor.  He described the January 2006 car accident and complained of neck, should, and back pain. Morella underwent chiropractic and massage therapy treatments between May 23, 2008, and November 26, 2008.  On March 6, 2009, plaintiff provided to Safeco additional information regarding his various courses of treatment and the impact the accident had on his work and personal life.  He claimed special damages of slightly over $10,000 (including both medical costs and mileage expenses), reserved the right to make a wage loss claim, and proposed a settlement amount of $75,000.  Safeco again evaluated the claim file, both internally and using a service called Mitchell Medical.  The unidentified Safeco evaluator noted past medical expenses of $9,694.80 and estimated general damages between $1,500 and $6,000.  Although the evaluator had doubts about the causal connection between the accident and any medical expenses after April 2007, he or she acknowledged that, in the context of an uninsured motorist bodily injury claim, Safeco might be required to cover all of the medical costs.  Although Morella's claim was evaluated at between $11,194.80 and $15,694.80, Safeco opted to repeat its

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND
CERTIFYING QUESTION TO SUPREME COURT   -3-

original settlement offer of $1,500. No explanation of how this number was generated was provided to Morella or his counsel.

On July 9, 2009, Morella demanded arbitration under the terms of the insurance policy. Toward the end of 2010, as the arbitration date approached, Safeco hired experts to evaluate whether the medical treatments Morella received were reasonable and necessary and to quantify his economic damages. The medical examiner generally agreed with Safeco's internal assessment that medical treatment after April 2007, at the latest, was not attributable to the accident. The wage loss analysis resulted in an opinion that Morella had economic damages of no more than $1,755 as a result of the accident. Despite the fact that these two expert reports actually reduced the estimated value of Morella's claim from the value that had been assigned by Safeco's internal evaluator, Safeco revised its settlement offer from $1,500 to $45,000 in October 2010. Morella again rejected the offer and the parties went to arbitration. The arbitrator issued his decision on November 22, 2010, awarding $62,000 in general damages (Morella had waived his claim to recover medical expenses).

Morella then filed this action in state court asserting claims of breach of contract, violations of the Washington insurance regulations, bad faith, and violations of the Washington Insurance Fair Conduct Act ("IFCA"). The action was removed in April 2012 and discovery has been completed. Through the pending motion, Morella seeks summary determinations that (a) Safeco violated WAC 284-30-330(7), (b) Safeco violated IFCA, and (c) Morella suffered "actual damages" for purposes of IFCA in the amount of $62,000.

## DISCUSSION

### I. VIOLATION OF WAC 284-30-330(7)

The Washington insurance regulations identify "[c]ompelling a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such

actions or proceedings" as an unfair method of competition and an unfair or deceptive act or practice in the settlement of insurance claims. WAC 284-30-330(7). Safeco's conduct in this matter falls squarely within this regulation. Over the course of a year, Safeco twice offered $1,500 in settlement of a claim that was ultimately valued by the arbitrator at $62,000, substantially more than the amount offered. The insured initiated arbitration in order to recover amounts due under the policy. Safeco suggests that Morella was not "compelled" to initiate arbitration because he acted too soon: he should have given Safeco an opportunity to sweeten the pot and negotiate a more reasonable settlement amount. Safeco offers no case law or other authority suggesting that WAC 284-30-330(7) requires an insured to negotiate to an impasse before seeking third-party assistance in obtaining the benefits of the insurance policy. Safeco's conduct in this matter – a lowball offer in the hopes that its insured would accept less than adequate compensation for his damages in order to avoid the delay and expense of litigation – is exactly the type of unfair act or practice at which WAC 284-30-330(7) is aimed.

## II. VIOLATION OF THE INSURANCE FAIR CONDUCT ACT (RCW 48.30.015)

The Insurance Fair Conduct Act ("IFCA") authorizes "first party claimant[s] to a policy of insurance who [are] unreasonably denied a claim for coverage or payment of benefits by an insurer [to] bring an action in superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs." RCW 48.30.015(1). The acts giving rise to an IFCA claim are described in the disjunctive – the insured must show that the insurer unreasonably denied a claim for coverage or that the insurer unreasonably denied payment of benefits. Safeco argues that IFCA is applicable only if there is an outright denial of a claim for benefits under the policy. The argument is not persuasive.

Safeco's interpretation impermissibly conflates the two acts identified by the legislature in RCW 48.30.015(1). Under the ordinary rules of statutory construction, all of the

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND
CERTIFYING QUESTION TO SUPREME COURT    -5-

1  words of the statute must be given effect, so that no provision is rendered meaningless or

2  superfluous. State v. Roggenkamp, 153 Wn.2d 614, 624 (2005).  Use of a conjunction in RCW

3  48.30.015(1) strongly suggests that the two elements are distinct, and use of the disjunctive

4  suggests that if either element is present, a claim exists under IFCA.  A "denial of a claim for

5  coverage" cannot, therefore, be construed as the same thing as a "denial of payments of

6  benefits."

7         Thus, the fact that Safeco did not deny Morella's claim for coverage does not end

8  the analysis.[1]  The Court must construe "denial of payments of benefits" to determine whether an

9  outright refusal to pay a specific benefit promised by the policy is required or whether an

10  unreasonably low payment will trigger the statute.  Having reviewed RCW 48.30.015 as a whole

11  and virtually all of the relevant case law, the Court concludes that an insurer cannot escape IFCA

12  simply by accepting a claim and paying or offering to pay an unreasonable amount.  The benefits

13  to which a first-party insured is entitled are generally described as payment of the reasonable

14  expenses or losses incurred as a result of an insured event.  See Decl. of James E. Banks (Dkt.

15  # 24), Ex. 1 (Safeco Policy No. H1874894).  Where the insurer pays or offers to pay a paltry

16  amount that is not in line with the losses claimed, is not based on a reasoned evaluation of the

17  facts (as known or, in some cases, as would have been known had the insurer adequately

18  investigated the claim), and would not compensate the insured for the loss at issue, the benefits

19  promised in the policy are effectively denied.  If, on the other hand, the insurer makes a

20  reasonable payment based on the known facts or is making a good faith effort to appropriately

21  value the loss, the fact that the insured did not immediately get all of the benefits to which it may

22  _____

23     [1]  The many cases cited by Safeco do not compel a different result.  Most of the cases either did
24  not involve a denial of a claim or the denial of payments at all (see Lease Crutcher Lewis WA, LLC v.
   Nat'l Union Fire Ins. Co. of Pittsburgh, PA, No. C08-1862RSL, 2010 WL 4272453, at *5 (W.D. Wash.
25  Oct. 15, 2010)) or involved denials that were reasonable (see Travelers Indem. Co. v. Bronsink, No.
   C08-1524JLR, 2010 WL 148366, at *2 (W.D. Wash. Jan. 12, 2010)).
26

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND
CERTIFYING QUESTION TO SUPREME COURT   -6-

1    ultimately be entitled does not establish an "unreasonable denial of payment of benefits." See

2    Country Preferred Ins. Co. v. Hurless, No. C11-1349RSM, 2012 WL 2367073 (W.D. Wash.

3    June 21, 2012) (no IFCA claim where insurer paid medical expenses and property damage

4    claims and was attempting to resolve ambiguities in the record regarding wage loss claim when

5    plaintiff demanded arbitration); Pinney v. Am. Family Mutual Ins. Co., No. C11-0175MJP, 2012

6    WL 584961 (W.D. Wash. Feb. 22, 2012) (no IFCA claim where insurer paid $6,500 in advance

7    while experts appraised damages, which were ultimately established at $8,798.89).[2]

8         The question in this case is whether an offer of $1,500 to settle Morella's claim

9    was, as a matter of law, an unreasonable denial of the payments to which he was entitled under

10   the policy.  The Court finds that it was.  In evaluating this matter, the Court is not overly

11   persuaded by the fact that Morella was eventually awarded $62,000 as compensation for his

12   losses.  The vagaries of litigation/arbitration are hard to predict, and, while the ultimate outcome

13   may inform the analysis, hindsight is not the most accurate lens through which to evaluate the

14   reasonableness or unreasonableness of a pre-suit settlement offer.  Rather, the Court's analysis

15   focuses primarily on what Safeco knew and/or should have known at the time the offer was

16   made to determine whether the proffered payment effectively denied Morella the benefits of the

17   insurance policy.

18        By Safeco's own estimation, Morella's claim was appropriately valued at

19   $11,194.80 - $15,694.80 at the time Safeco chose to offer $1,500 in full settlement.  This

20   evaluation was based primarily on a review of Morella's medical records and a letter from

21   counsel indicating that the accident "had a deeply adverse impact on Mr. Morella['s] life" and

22

23        [2] Morella argues that an IFCA cause of action exists if the insurer unreasonably denies a claim
24   for coverage, unreasonably denies payment of benefits, or violates one of the WAC provisions
     enumerated in RCW 48.30.015(5).  While treble damages and attorney's fees are available under RCW
25   48.30.015(2) and (3) if a violation of the WAC provisions is established, a regulatory violation, standing
     alone, does not trigger the right to bring a state court action under RCW 48.30.015(1).
26

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND
CERTIFYING QUESTION TO SUPREME COURT    -7-

1    reserving a wage loss claim.  Morella requested $75,000 to cover all insured losses arising from

2    the accident.  Safeco did not investigate the impact the accident had on Morella's daily activities,

3    the extent of his discomfort or impairment, or the scope of the potential claim for lost wages.

4    Safeco's estimate of general damages in the range of $1,500 - $6,000 does not, therefore, appear

5    to have a factual basis (a conclusion that is supported by the fact that the actual value of

6    Morella's losses, including general damages and lost wages, was much higher).  Even if

7    Safeco's March 2009 valuation were reasonable despite the failure to investigate, the amount the

8    insurer chose to offer Morella reflected the lowest estimate of general damages and excluded all

9    other expenses and losses covered by the policy.  Given the undisputed facts of this case, the

10   Court finds that an offer of $1,500 in payment of a claim that Safeco internally valued at seven

11   to ten times as much and which had not been fully investigated was an unreasonable denial of

12   the payment of benefits to which Morella was entitled.

13   **III.  "ACTUAL DAMAGES" UNDER IFCA**

14            Pursuant to RCW 48.30.015(2), where, as here, the Court finds that an insurer has

15   unreasonably denied payment of benefits and/or violated WAC 284-30-330(7), it may "increase

16   the total award of damages to an amount not to exceed three times the actual damages."  "Actual

17   damages" are not defined in IFCA, but are generally understood as the amount necessary to

18   compensate plaintiff for an injury or loss.  Blaney v. Int'l Ass'n of Machinists and Aerospace

19   Workers, Dist. No. 160, 114 Wn. App. 80, 96 (2002).  Unfortunately, this general understanding

20   does not resolve the ambiguity identified by the parties.

21            Morella argues that his damages under IFCA are the $62,000 awarded in

22   arbitration, *i.e.*, the amount that was necessary to compensate Morella for Safeco's unreasonable

23   denial of payment of benefits owed under the policy.  Safeco, on the other hand, rightly points

24   out that the $62,000 had already been paid at the time this action was filed and cannot be re-

25   awarded in this lawsuit.  What, then, are the "actual damages" that may be recovered in this

26

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND
CERTIFYING QUESTION TO SUPREME COURT    -8-

IFCA action?  Is it the $62,000 awarded in arbitration or is it simply the loss of use of that money for some period of time, the costs of the arbitration proceeding itself, or some other compensable injury?

The legislative history of IFCA suggests that one of the motivating factors behind the treble damages provision was to provide more incentive for insurers to treat their insureds fairly.  Before IFCA, an unreasonable refusal to pay benefits or a violation of the WAC might result in an order to pay what the insurer already owed, with the threat of an enhanced award under the Consumer Protection Act.  IFCA provided a direct private cause of action designed to rectify unreasonable coverage and payment decisions and to provide for treble damages and cost/fee shifting.  It seems clear that, had Morella filed suit seeking both a benefits determination and relief under IFCA upon receipt of Safeco's lowball offer of $1,500, his "actual damages" in that combined action would likely have been the amount of benefits awarded – $62,000.  Morella was precluded from following that course of action, however.  The insurance policy compels arbitration if the parties do not agree on the amount of damages involved in an uninsured motorist claim (Decl. of James E. Banks (Dkt. # 24), Ex. 1 at 19 (Safeco Policy No. H1874894)), and there is no indication that the parties agreed to arbitrate an IFCA claim.  Thus, Morella was unable to follow the path set forth by the legislature when it enacted IFCA and is now left in a position where the most natural reading of the phrase "actual damages" does not fit the procedural posture of this case.

In his motion to remand, Morella noted the novelty and difficulty of determining "actual damages" in this litigation.  Dkt. # 13 at 6.  The Court raised the possibility of certifying the question to the Washington State Supreme Court (Dkt. # 20 at 4), and hereby finds that certification is appropriate in this case.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND
CERTIFYING QUESTION TO SUPREME COURT   -9-

**IV. CERTIFICATION TO THE WASHINGTON STATE SUPREME COURT**

Pursuant to RCW 2.60.020, "[w]hen in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court for answer the question of local law involved and the supreme court shall render its opinion in answer thereto." The certification process serves the important judicial interests of efficiency and comity: as noted by the United States Supreme Court, certification saves "time, energy and resources and helps build a cooperative judicial federalism." Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974). Because this matter involves issues of first impression regarding the definition of "actual damages" under IFCA, this issue should be presented for expedited review to the Washington State Supreme Court.

The following question is hereby certified to the Supreme Court of Washington:

> How are "actual damages" calculated or defined under the Insurance Fair Conduct Act (RCW 48.30.015) where, as in this case, the insured obtained a $62,000 arbitration award in his favor prior to initiating the IFCA action in state court?

The Clerk of Court is directed to submit to the Supreme Court of Washington certified copies of this Order, a copy of the docket in the above-captioned matter, and Dkt. # 1, 2, 5, 7-11, 13, 14, 16, 17, 20, and 23-28. The record so compiled contains all matters in the pending cause deemed material for consideration of the local law question certified for answer.

The plaintiff in this action is designated as the appellant before the Supreme Court of Washington. The Clerk of Court shall notify the parties as soon as possible, but no more than three days, after the above-described record is filed in the Supreme Court of Washington. The parties are referred to state RAP 16.16 for additional information regarding procedure before the Supreme Court.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND
CERTIFYING QUESTION TO SUPREME COURT  -10-

1    This matter is hereby STAYED until the Supreme Court of Washington answers
2    the certified question.

3

4    Dated this 12th day of April, 2013.

5

6    _Robert S. Lasnik_
     Robert S. Lasnik
7    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND
CERTIFYING QUESTION TO SUPREME COURT  -11-